**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| Charles Garrett, *on behalf of himself and all others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> AFNI, Inc., <br><br> Defendant. | Civil Action No:   1:22-cv-1067 <br><br> **CLASS ACTION COMPLAINT** <br> **DEMAND FOR JURY TRIAL** |

**COMPLAINT SEEKING DAMAGES FOR VIOLATIONS OF**
**THE FAIR DEBT COLLECTION PRACTICES ACT**

**INTRODUCTION**

1. The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy. Congress wrote the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

2. Plaintiff Charles Garrett ("Plaintiff"), by and through Plaintiff's attorneys, brings this Class Action Complaint to challenge the actions of Defendant AFNI, Inc. ("Defendant") regarding Defendant's alleged violations of the FDCPA that caused Plaintiff's damages.

3. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

4. While many violations are described below with specificity, this Complaint alleges violations of the FDCPA cited in its entirety.

5. Unless otherwise stated, all the conduct engaged in by Defendant took place in Indiana.

6. All violations alleged herein are material violations of the FDCPA.

7. Any of Defendant's communications described herein are to be interpreted under the "unsophisticated consumer" standard. *See Gammon vs. GC Services, Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994).

8. Through this Complaint, Plaintiff does not allege that any state court judgment was entered against anyone in error, and Plaintiff does not seek to reverse or modify any judgment of any state court.

9. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendant.

10. Defendant acted at all times mentioned herein through its employee(s) and/or representative(s).

## JURISDICTION AND VENUE

11. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k(d).

12. This Court has federal question jurisdiction because this case arises out of violation of federal law—namely, the FDCPA.

13. Defendant is subject to the Court's personal jurisdiction, as Defendant conducts business within the Southern District of Indiana, and Defendant's conduct giving rise to this action accrued in the Southern District of Indiana.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), in that a substantial portion of the events or omissions giving rise to this action occurred in this District.

15. Plaintiff resides in this Judicial District.

## PARTIES

16. Plaintiff is an adult individual residing in Marion county, Indiana, and is a "consumer" as the term is defined by 15 U.S.C. § 1692a(3).

17. Plaintiff is informed and believes, and thereon allege, that at all times relevant, Defendant conducted business in the State of Indiana.

18. Defendant is a debt collection agency operating from an address at 1310 Martin Luther King Drive, Bloomington, IL 61702, and is a "debt collector" as the term is defined by 15 U.S.C. § 1692a(6).

19. Defendant's registered agent address is: C T Corporation System, 334 North Senate Avenue, Indianapolis, IN, 46204.

20. Defendant is a person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another.

21. This case involves an obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes,

whether or not such obligation has been reduced to judgment otherwise known as a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

22. Defendant attempted to collect a "debt" from Plaintiff.

## FACTUAL ALLEGATIONS

### *Background*

23. Defendant is a debt collection agency attempting to collect an alleged debt from Plaintiff.

24. Section 1692c(b) of the FDCPA, titled "Communication with third parties," states:

Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. § 1692c(b).

25. Section 1692c(b) cross-references section 1692b, which governs the way a debt collector may communicate "with any person other than the consumer for the purpose of acquiring location information." 15 U.S.C. § 1692b.

26. The FDCPA thus broadly prohibits a debt collector from communicating with anyone other than the consumer "in connection with the collection of any debt," subject to several explicitly enumerated exceptions—some in § 1692c(b), and others in § 1692b.

27. Despite this prohibition—one designed to protect consumers' privacy—debt collectors, including Defendant, often send information regarding consumers' alleged debts to third-party mail vendors.

28. These third-party mail vendors use information provided by debt collectors—such as a consumer's name, the name of the creditor to whom a debt is allegedly owed, the name of the

original creditor, and the amount of an alleged debt—to fashion, print, and mail debt collection letters to consumers.

29. This unnecessary practice exposes private information regarding alleged debts to third parties not exempted by the FDCPA.

30. Upon information and belief, Defendant routinely provides protected debt collection information regarding consumer debts to third-party mail vendors (that are not authorized by the FDCPA to receive such information) in connection with the collection of a debt and in violation of the FDCPA.

### *Defendant's Improper Disclosures to a Third-Party*

31. Plaintiff allegedly incurred a debt to AT&T that was primarily for personal, family or household purposes as defined by §1692(a)(5) (the "Debt").

32. The Debt allegedly owed by Plaintiff went into default.

33. After the Debt went into default, the Debt was placed or otherwise transferred to Defendant for collection.

34. Thereafter, Defendant communicated with at least one third-party mail vendor in connection with the collection of the Debt.

35. Under the FDCPA, 15 U.S.C. § 1692a(2), a "communication" means "the conveying of information regarding a debt directly or indirectly to any person through any medium."

### *The Letter*

36. On or after June 16, 2021, a written communication purporting to be from Defendant was sent to Plaintiff in connection with the collection of the Debt (the "Letter").

37. The Letter disclosed the balance of the Debt.

38. The Letter also identified the creditor to whom Defendant alleged the Debt was owed.

39. The Letter identified Defendant as a debt collector and stated: "This is an attempt to collect a debt. Any information obtained will be used for that purpose. This communication is from a debt collector."

40. Upon information and belief, Defendant did not print the Letter.

41. Upon information and belief, Defendant did not mail the Letter.

42. Rather, upon information and belief, Defendant, in connection with the collection of a debt, provided information regarding Plaintiff and the Debt—including Plaintiff's name, address, the balance of the Debt, the fact Plaintiff was a debtor, and other private details regarding the Debt—to a third-party mail vendor, CompuMail, Inc.

43. The third-party mail vendor, CompuMail, Inc. and its employees had access to and subsequently processed information about the Debt into a letter format.

44. The third-party mail vendor, CompuMail, Inc., printed the Letter and mailed it to Plaintiff.

45. The return address on the Letter did not match Defendant's address.

46. The return address on the Letter is "DEPT 555 PO BOX 4115, CONCORD, CA 94524" (the "Concord P.O. Box").

### *The Third-Party Mail Vendor*

47. The Concord P.O. Box has previously been identified as a P.O. Box address for CompuMail, Inc. in litigation involving another debt collector that shared private consumer data with a third-party mail vendor. *See Hunstein v. Preferred Collection & Management Services, Inc*, 8:19-cv-00983-TPB-TGW [Doc. No. 1-4].

48. Moreover, a common return address on dunning letters used by a different debt collector on a different dunning letter suggests the Concord P.O. Box is not exclusively owned by Defendant.

49. Defendant does not own the Concord P.O. Box.

50. Further, a common return address on dunning letters suggests the letters are not actually coming from the debt collectors, but instead are coming from a third-party.

51. The Concord P.O. Box appears to be associated with CompuMail, Inc., a third-party mail vendor.

52. CompuMail, Inc.'s headquarters is at 4057 Port Chicago Hwy Ste. 300, Concord, CA 94520 and offers comprehensive print and mail services.

53. CompuMail, Inc.'s webpage states "Over the past 20 years, CompuMail has become the premier direct mail company in the United States. For most of our history, we've specialized as a collection agency mail vendor, but we now offer services for any industry requiring the best direct mail solutions. No one offers greater coverage and more options to help you get your letter opened faster."

54. According to CompuMail, Inc.'s website, CompuMail, Inc. differentiates itself from its competition because it offers more that "just laser print and mail", instead "CompuMail offers several multi-channel delivery options to help you get your communications delivered and opened faster. In addition to traditional print and mail services, we provide electronic message delivery and online payment portals."

55. CompuMail, Inc. also offers "Pre-mail data scrubbing" that "will improve the deliverability of your letters" and "speeds up your collections process."

56. Plaintiff did not provide Defendant prior express consent to communicate, in connection with the collection of the Debt, with any third-party mail vendor.

57. CompuMail, Inc. is not the consumer about whom the debt relates.

58. CompuMail, Inc. is not the consumer's attorney.

59. CompuMail, Inc. is not a consumer reporting agency.

60. CompuMail, Inc. is not the creditor for the Debt.

61. CompuMail, Inc. is not the attorney of the creditor for the Debt.

62. CompuMail, Inc. is not the attorney of the debt collector.

63. Defendant's communications with CompuMail, Inc. were in connection with the collection of a debt since it involved disclosure of the Debt to a third-party with the objective being to communicate with, and motivate consumers (including Plaintiff) to pay the alleged debt.

64. Further, Defendant's communications with CompuMail, Inc. was concerned with, referenced, and related to the Debt.

65. Defendant's communications with CompuMail, Inc. invaded Plaintiff's privacy and intruded upon Plaintiff's seclusion by sharing private debt collection information with a third-party and its employees that were not entitled to receive such information.

66. Defendant also caused a harm similar to a public disclosure of private facts, in that Defendant gave publicity to a third-party and its employees about a matter concerning the private life of Plaintiff.

67. "When determining if a statutorily identified, intangible harm has a close-but-not-exact match in American history or at common law, we look to the kind of injury the statute protects, not the degree of harm suffered." *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 (7th Cir. 2020).

68. Spreading private debt collection information about a consumer to third parties and their employees not authorized by the FDCPA without the consumer's consent also increases the likelihood that such debt collection information will be further spread (either intentionally or unintentionally) to other parties not authorized by the FDCPA.

## **CLASS ALLEGATIONS**

69. Plaintiff brings this action on behalf of himself individually, and on behalf of all others similarly situated ("the Class").

70. Plaintiff represents, and is a member of the Class, defined as follows:

    (i) all consumers with addresses within the United States; (ii) about whose debt Defendant communicated information in connection with the collection of such debt to any third-party vendor(s); (iii) without the subject consumer's prior consent given directly to Defendant for the communications; (iv) at any time one year prior to the date of the filing of this Action.

71. Defendant and its employees or agents are excluded from the Class.

72. Alternatively, Plaintiff represents, and is a member of the Sub-Class One, defined as follows:

    (i) all consumers with addresses within the State of Indiana; (ii) about whose debt Defendant communicated information in connection with the collection of such debt to any third-party vendor(s); (iii) without the subject consumer's prior consent given directly to Defendant for the communications; (iv) at any time one year prior to the date of the filing of this Action.

73. Defendant and its employees or agents are excluded from the Sub-Class One.

74. Alternatively, Plaintiff represents, and is a member of the Sub-Class Two, defined as follows:

    (i) all consumers with addresses within the county of Marion, state of Indiana; (ii) about whose debt Defendant communicated information in connection with the collection of such debt to any third-party vendor(s); (iii) without the subject consumer's prior consent given directly to Defendant for the communications; (iv) at any time one year prior to the date of the filing of this Action.

75. Defendant and its employees or agents are excluded from the Sub-Class Two.

76. Sub-Class One and Sub-Class Two are collectively referred to as the "Sub-Classes".

77. Plaintiff does not know the exact number of persons in the Class or the Sub-Classes but believes it to be in the several hundreds if not thousands or more, making joinder of all these actions impracticable.

78. The joinder of the Class members and/or Sub-Class members is impractical and the disposition of their claims in a class action will provide substantial benefits both to the parties and to the Court.

79. The identity of the individual members of the Class and/or Sub-Classes is ascertainable through Defendant and/or third-party vendor records or by public notice.

80. There is a well-defined community of interest in the questions of law and fact involved affecting the members of the Class and/or Sub-Classes.

81. The questions of law and fact common to the Class and/or Sub-Classes predominate over questions affecting only individual class members, and include, but are not limited to, the following:

   a. Whether a debt collector has a right to communicate, in connection with the collection of a debt, consumer debt information with a third-party letter vendor;

   b. Whether members of the Class and/or Sub-Classes are entitled to the remedies under the FDCPA;

   c. Whether members of the Class and/or Sub-Classes are entitled to declaratory relief pursuant to the FDCPA;

   d. Whether members of the Class and/or Sub-Classes are entitled to injunctive relief pursuant to the FDCPA; and

   e. Whether members of the Class and/or Sub-Classes are entitled to an award of reasonable attorneys' fees and costs of suit pursuant to the FDCPA.

82. As a person that received written communications that appear to confirm that information about his Debt was sent to a third-party vendor in connection with the collection of the Debt, Plaintiff is asserting claims that are typical of the Class and/or Sub-Classes.

83. Plaintiff will fairly and adequately protect the interests of the Class and/or Sub-Classes.

84. Plaintiff has retained counsel experienced in consumer class action litigation and in handling claims involving unlawful debt collection practices.

85. Plaintiff's claims are typical of the claims of the Class and/or Sub-Classes, which all arise from the same operative facts involving unlawful collection practices.

86. A class action is a superior method for the fair and efficient adjudication of this controversy.

87. Class-wide damages are essential to induce Defendant to comply with federal law.

88. The interest of class members in individually controlling the prosecution of separate claims against Defendant is small because the maximum statutory damages in an individual action under the FDCPA are $1,000.00.

89. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims, *e.g.*, securities fraud.

90. Additionally, members of the Class and/or Sub-Classes are unlikely to be aware of their rights.

91. Defendant has acted on grounds generally applicable to the Class and/or Sub-Classes, thereby making appropriate final declaratory relief with respect to the Class and/or Sub-Classes as a whole.

92. Plaintiff contemplates providing notice to the putative class members by direct mail in the form of a postcard and via an internet website.

93. Plaintiff requests certification of a hybrid class for monetary damages and injunctive and/or declaratory relief.

**FIRST CAUSE OF ACTION**
**The Fair Debt Collection Practices Act**
**15 U.S.C. § 1692 *et seq*.**

94. Plaintiff repeats, re-alleges, and incorporates by reference all above paragraphs.

95. The foregoing acts and omissions constitute violations of the FDCPA, including, but not limited to 15 U.S.C. § 1692c(b).

96. Section 1692c(b) provides that "a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector."

97. Section 1692c(b) identifies a specifically enumerated list of entities that a debt collector can communicate with in connection with the collection of a debt and that list does not include third-party mail vendors to send debt collection letters.

98. By communicating regarding the Debt—including by disclosing, among other things, the existence of the Debt, the amount owed, and the alleged creditor—with a third-party mail vendor, Defendant violated 15 U.S.C. § 1692c(b).

99. The harm Plaintiff suffered is particularized in that the violative debt collection letter at issue was sent to Plaintiff personally and regarded his personal alleged Debt.

100. And the violation of Plaintiff's rights not to have their private information shared with third parties is a concrete injury sufficient to confer standing.

101. The harm Plaintiff alleges here—disclosure of private information of a personal, sensitive nature to third-party vendors—is precisely the type of abusive debt collection practice that

the FDCPA was designed to prevent. *See* 15 U.S.C. § 1692(a) ("Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to *invasions of individual privacy*.") (Emphasis added).

102. Moreover, concrete injuries can be found where "intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016).

103. By communicating with a third party in connection with the collection of the Debt, Defendant harmed Plaintiff by invading his privacy.

104. By communicating with a third-party in connection with the collection of the Debt, Defendant harmed Plaintiff by disclosing private facts about the Debt, thus intruding upon Plaintiff's seclusion.

105. For more than a century, U.S. Court have held allegations of invasions of personal privacy are a valid basis for tort suits. *See, e.g., Pavesich v. New England Life Ins. Co.*, 122 Ga. 190, 50 S.E. 68 (1905); *Munden v. Harris*, 153 Mo. App. 652, 134 S.W. 1076 (1911); *Kunz v. Allen*, 102 Kan. 883, 172 P. 532 (1918).

106. Because of the close relationship between 15 U.S.C. § 1692c(b) and the harm that Courts in the United States have long recognized as cognizable and because of Congress's explicit statement that the FDCPA was designed to protect against invasions of individual privacy, Plaintiff and the proposed Class and Sub-Classes have the requisite standing to sue and seek redress for their harms.

107. As a result of each and every violation of the FDCPA, Plaintiff is entitled to statutory damages in an amount up to $1,000.00 and such amount as the Court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the

lesser of $500,000.00 or 1 per centum of the net worth of the debt collector pursuant to 15 U.S.C. § 1692k(a)(2)(B); and costs together with reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) from Defendant.

## REQUEST FOR A JURY TRIAL

108. Plaintiff is entitled to, and demands, a trial by jury.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendant:

- That this action be certified as a class action on behalf of the Class and/or Sub-Class One and/or Sub-Class Two as requested herein;

- That Plaintiff be appointed as representative of the Class and/or respective Sub-Classes;

- That Plaintiff's counsel be appointed as counsel for the Class and/or respective Sub-Classes;

- An award of statutory damages of $1,000.00 for Plaintiff and such amount as the Court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000.00 or 1 per centum of the net worth of the debt collector, pursuant to 15 U.S.C. § 1692k(a)(2)(B);

- An award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1692k(a)(3), against Defendant;

- Any and all other relief that this Court deems just and proper.

Dated: May 23, 2022

Respectfully Submitted,

By: <u>/s/Richard J. Shea</u>

Richard J. Shea, Esq., # 21396-53
Sawin & Shea, LLC.
Attorneys for Plaintiff
6100 N. Keystone Avenue, Suite 620
Indianapolis, IN 46220
Telephone: (317) 255-2600
Facsimile: (317) 255-2905
E-mail: rshea@sawinlaw.com